980 A.2d 612 (2009)
In re In the Matter of M.S.
Appeal of R.S.
No. 1297 WDA 2008
Superior Court of Pennsylvania.
Submitted January 26, 2009.
Filed July 29, 2009.
Reargument Denied September 29, 2009.
Gerald J. Villella, Erie, for appellant.
Ines M. Massella, Erie, for appellee.
Elizabeth M. Dwyer, Erie, for natural father, Participating Party.
Amy E. Jones, Erie, for Erie County, Participating Party.
BEFORE: PANELLA, DONOHUE, and POPOVICH, JJ.
OPINION BY POPOVICH, J.:
¶ 1 Appellant R.S. appeals the trial court's order granting the Erie County Office of Children and Youth (ECOCY) temporary legal and physical custody of Appellant's minor daughter, M.S., and setting her permanency goal as adoption. We affirm.
¶ 2 We find no fault with the trial court's account of the events germane to this case; to-wit:
The facts may be summarized as follows. M.S., while living in the home of her parents, was repeatedly sexually assaulted by at least one but in all likelihood more than one of her brothers. M.S. was sexually assaulted by 16-year old P.S., who at the time of the hearing was detained in the Edmund L. Thomas Detention Center as a result of his conduct. At the time of the assaults, [Appellant] was not at home but she left *613 M.S. in the care of her 15 year old brother, R.S. She was examined at Saint Vincent Health Center and was found to have evidence of vaginal trauma. Thereafter, P.S. admitted to raping his sister. At the time, M.S. indicated that she did not want to be returned to the care of [Appellant] until she could assure that she would be safe. M.S. also disclosed that she had been sexually abused by all of her brothers. At the time of the hearing, her brother R.S. continued to reside in [Appellant's] home.
[Appellant] has a longstanding relationship with [ECOCY] going back approximately 12 years. [ECOCY] received reports of child sexual abuse in the home in 1995, 1997, 2002 and 2005. In two of those instances, the Childline Report was determined to be founded [...]. In 2005, it was reported that D.S., the oldest brother, sexually abused M.S. In addition, there are reports of physical abuse in the home in 1995, 1999 and 2005. [Father] has prior criminal convictions for indecent assault and indecent exposure, as well as criminal attempt at involuntary deviate sexual intercourse and simple assault. At the time of the hearing, M.S.'s brother, R.S., continued to live with [Appellant] and R.S. had also been a perpetrator of sexual abuse on M.S. and in fact was responsible for M.S.'s care at the time when his brother P.S. raped her.
M.S. has significant mental health problems and is diagnosed with oppositional defiant disorder, attention deficit, hyperactivity disorder and bipolar disorder. It is noted that she has a history of sexual abuse and is prescribed medication for her conditions and receives mental health services from Safe Harbor Behavior Health. [Appellant] also suffers from mental health illnesses, including depression and bipolar disorder, and has experienced suicidal ideation and has been hospitalized for her condition. Furthermore, she has cognitive limitations and requires ongoing services in order to maintain some stability in her home. [Appellant] also has a long history of being sexually abused and she reports being raped by her uncle and father as a child and by a boyfriend as an adult. She has been involved in many abusive relationships and she has in the past had difficulty in providing proper supervision of her children because of her involvement with abusive men. She has not been able to control her children in the past and her oldest son has resided with the maternal grandmother since he was very young.
At the time of the disposition hearing [held on June 27, 2008,] M.S. was adjusting well to foster care and indicated that she liked being there, although she misses [Appellant].
Also, at the time of the disposition hearing, [ECOCY] requested that the goal of M.S. be adoption. It is [ECOCY] position that [Appellant] is incapable of protecting M.S. from further sexual abuse and there is simply no way of assuring her safety and no services can be provided to [Appellant] that will improve her ability to care for M.S. There is continuing concern that [Appellant] has a history of being involved with abusive paramours and jumping in and out of relationships and when this occurs she does not pay the necessary attention to the needs of her children. It is noteworthy that at the time of the dispositional hearing she had a new paramour and that on one occasion when meeting with intake he was engaging in what was clearly inappropriate touching and displays of affection towards [Appellant] in the presence of a caseworker.
At the time of the dispositional hearing, [Father] was incarcerated and not *614 due to be released until July 2009. Although he was not present at the hearing, his attorney related to the [trial c]ourt that she discussed M.S.'s situation with her client and it was his opinion that M.S. should not be returned to [Appellant's] care. [Appellant] maintained at the hearing that she can protect M.S. and she would follow whatever rules the [trial c]ourt required. However, she made it absolutely clear that she would not exclude M.S.'s older brothers from the household. She indicated, "I can't choose between my two children."
* * * *
[Appellant] is mentally ill and has a history of being involved with abusive paramours and having her children exposed to individuals who have abused them. She has a history of not properly caring for her children. Given the age and circumstances of M.S. and her serious mental health problems, absent a profound change in [Appellant's] circumstances and position with regard to the need to protect M.S., it is inconceivable that reunification with [Appellant] would be in her best interest.
Trial court opinion, 9/29/08, at 1-4. Based on the preceding facts, the trial court directed ECOCY to take the steps necessary to make M.S. available for adoption, but not to the point of foreclosing Appellant from participating in and continuing to advance her position throughout the hearing process. Id. Yet, the trial court found, and, on the basis of the factual record, we agree that the likelihood that Appellant may remedy the condition that led ECOCY to taking the 12-year-old minor into protective custody after evidence of sexual abuse by one or all three of her older brothers is slight and that a permanency arrangement that facilitates M.S.'s emotional and physical well-being will be more likely found in an arrangement other than reunification. Id.
¶ 3 Appellant's efforts to have the trial court reconsider its disposition order authorizing ECOCY to terminate involuntarily her parental rights proved to be fruitless, which denial prompted Appellant to file a notice of appeal raising but a single issue for our consideration; namely: "Did the court below abuse its discretion in setting the Disposition Goal as adoption for a 12-year-old child Adjudicated Dependent who was sexually abused by her juvenile siblings, but who expressed a preference to return to her mother?" Appellant's brief, at 4. Interestingly, M.S.'s guardian ad litem joins in Appellant's contention that the trial court abused its discretion in setting the initial permanency goal in this case as adoption.
¶ 4 In the present case, we measure the actions of the trial court under an abuse of discretion standard, which requires that we must determine whether its judgment was manifestly unreasonable, that the trial court disregarded or misapplied the law, or that its action was the result of partiality, prejudice, bias or ill will. In the Matter of S.B., 208 Pa.Super. 21, 943 A.2d 973, 977 (2008), appeal denied, 598 Pa. 782, 959 A.2d 320 (2008).
¶ 5 All parties agree that M.S. has been the victim of sexual violence (pursuant to 42 Pa.C.S.A. § 6302, rape and incest are types of "sexual violence"), and the fact that there is no evidence that the sexual violence was perpetrated by a parent does not dissuade us from affirming the trial court's dispositional order calling for adoption. It is true that the Juvenile Act does not define sexual violence by siblings to constitute "aggravated circumstances." Nonetheless, the lack of any aggravating circumstances attributable to the parent Appellant in the form of sexual abuse did not prohibit the trial court from authorizing *615 immediate termination of family unification. Stated otherwise, the initial permanency goal for M.S. need not be set at reunification, especially since ECOCY has provided any and all reasonable services to assist Appellant toward this end without success.
¶ 6 We do not read the Adoption and Safe Families Act (ASFA, 42 U.S.C. § 671 et seq.) and Pennsylvania's Juvenile Act (42 Pa.C.S.A. § 6301 et seq.) so narrowly as to turn a blind eye to the realities of this case, supposedly in the name of pursuing the spirit of the law. Both statutes are compatible pieces of legislation seeking to benefit the best interest of the child, not the parent. There is no denying that ASFA promotes the reunification of foster care children with their natural parents when feasible, but the one notable exception to the goal of reunification is where aggravated circumstances are extant in the home, which encompasses abandonment, torture, and/or abuse of a chronic or sexual nature:
(D) reasonable efforts of the type described in subparagraph (B) shall not be required to be made with respect to a parent of a child if a court of competent jurisdiction has determined that
(i) the parent has subjected the child to aggravated circumstances (as defined in State law, which definition may include but need not be limited to abandonment, torture, chronic abuse, and sexual abuse)[.]
42 U.S.C. § 671(a)(15)(D)(i). In like fashion, Pennsylvania's Juvenile Act focuses upon reunification of the family, which means that the unity of the family shall be preserved "whenever possible." 42 Pa. C.S.A. § 6301(b)(1). However, as with ASFA, all family reunification may cease in the presence of a finding of aggravated circumstances; to-wit:
(c.1) Aggravated circumstances.If the county agency or the child's attorney alleges the existence of aggravated circumstances and the court determines that the child is dependent, the court shall also determine if aggravated circumstances exist. If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family shall be made or continue to be made and schedule a dispositional hearing as required by section 6341(c.1) (relating to disposition of dependent child).
42 Pa.C.S.A. § 6341(c.1). Preliminarily, we note that the Juvenile Act was amended in 1998 to conform to ASFA. Furthermore, the 1998 amendments to the Juvenile Act, as required by ASFA, place the focus of court proceedings on the child. Safety, permanency, and the well-being of the child must take precedence over all other considerations, including the rights of the parents. See In re C.B., 861 A.2d 287 (Pa.Super.2004).
¶ 7 Appellant takes the position that the trial court's failure to make a specific finding of "aggravated circumstances," i.e., there was no nexus held to exist between the acknowledged sexual assault of the minor child M.S. and the parent Appellant, ECOCY was precluded from initiating adoption proceedings. We do not take such a myopic view of the admitted facts in this case; to-wit:
1) On May 2, 2008, ECOCY took M.S. into protective custody and filed an emergency protective order application after obtaining evidence of sexual abuse of at least one and perhaps all three of her brothers;

*616 2) On May 7, 2008, the trial court ruled at the detention hearing that detention was necessary for the protection of M.S., that allowing M.S. to remain in the home would be contrary to her welfare, and that due to the emergency nature of the placement, the lack of reunification services prior to removal was reasonable;
3) On May 20, 2008, a master held an adjudication hearing wherein Appellant stipulated to the facts (sexual assaults of M.S.), save that she had any knowledge that M.S. was being sexual assaulted;
4) At the conclusion of the May 20, 2008, hearing, Master found sufficient facts to demonstrate a lack of parental care and control to warrant a finding of dependency, and M.S. was adjudicated dependent on May 22, 2008;
5) At the June 27, 2008, dispositional hearing, M.S. testified that while living with her parents she was sexually assaulted by her older siblings, and one of the siblings continued to remain in the family home at the time of the dispositional hearing;
6) Appellant refused to remove her sons from the family home, even after learning of the sexual assaults committed upon M.S. by her siblings; and
7) ECOCY had reports of child sexual abuse in Appellant's home over a period of twelve years (documented to have occurred in 1995, 1997, 2002, and 2005), two of which were confirmed.
¶ 8 One may not look askance at such facts merely because they show a passive neglect (and not an active participation) by the parent Appellant in the sexual abuse sustained by M.S. at the hands of her siblings while living with Appellant. To the contrary, the federal and state juvenile statutes are not to be read so narrowly as to equate "aggravated circumstances" only to sexual abuse of a child by their parent as a prerequisite to initiating adoption proceedings, which Appellant espouses. We take exception to such postulation (if there is a parental assault of a child only then do "aggravated circumstances" exist to initiate adoption proceedings).
¶ 9 The conduct proscribed under ASFA and the Juvenile Act is not circumscribed to a parental sexual assault of a minor child. In the case of ASFA, the presence of "aggravated circumstances" sufficient to justify termination of parental rights merely requires that, "the parent has subjected the child to aggravated circumstances [such] as [...] sexual abuse [...]." 42 U.S.C. § 671(a)(15)(D)(i). It is beyond cavil that Appellant "has subjected" M.S. to sexual abuse by failing to supervise her sons, yet she refuses to implement any measures to separate the siblings in order to cease any further assaults. Even after learning of the abhorrent behavior, Appellant has declined or been unable to choose among her children, even though continued interaction would not be beneficial to M.S. and could result in the termination of her parental rights.
¶ 10 Likewise, we do not read Pennsylvania's Juvenile Act in such a fashion as to limit its application to situations where a parent sexually abused the minor child before terminating parental rights. See In re R.P., L.P., 957 A.2d 1205, 1217 (Pa.Super. 2008) (As used in the Juvenile Act, aggravated physical neglect means "[a]ny omission in the care of the child which results in a life-threatening condition or seriously impairs the child's functioning."). We look at the overall effect and purpose to be achieved by the Juvenile Act. For example, the fundamental purpose of the Juvenile Act is, "To preserve the unity of the family whenever possible [... t]o provide for the care, protection, and wholesome mental and physical development of children [...]." 42 Pa.C.S.A. § 6301(b)(1), (1.1). Also, the trial court is instructed to *617 enter an order of "disposition best suited to the protection and physical, mental and moral welfare of the child." 42 Pa.C.S.A. § 6351(a).
¶ 11 Appellant takes the position that the trial court never found as a fact that she was cognizant that her sons were sexually abusing their sister, M.S., nor was there any basis to conclude that Appellant subjected M.S. to sexual abuse by failing to supervise her, or by extension Appellant's sons. We disagree. In recounting the facts, the trial court made some relevant observations; to-wit: "[M.S.] was adjudicated dependent on May 22, 2008, because she had been sexually assaulted on numerous occasions by some or all of her brothers who were residing in her home. It was alleged by one of the brothers that the mother [Appellant] was aware of what was going on and did nothing to protect M.S." Trial court opinion, 9/29/08, at 1 (emphasis added). Further, the trial court found as a fact that M.S. was sexually assaulted by her brothers while under Appellant's supervision or lack thereof; namely: "The facts of this case are very straightforward. M.S. is the victim of sexual abuse from more than one brother while under [Appellant's] care. [Appellant] refuses to separate the boys from her except on a temporary basis. There is no reasonable prospect of this position changing and nothing offered by [Appellant] to suggest a meaningful alternative." Id. at 4 (emphasis added).
¶ 12 In In re S.B., 208 Pa.Super. 21, 943 A.2d 973 (2008), the mother and father of the child filed an appeal challenging the order changing their family goal from "return home" to adoption, which transpired only after a series of permanency hearings. The facts in In re S.B., albeit not identical to the case at bar, are instructive in the assessment of the present appeal. This Court remarked there:
The trial court must focus on the child and determine the goal with reference to the child's best interests, not those of the parents. "Safety, permanency, and well-being of the child must take precedence over all other considerations." Further, at the review hearing for a dependent child who has been removed from the parental home, the court must consider the statutorily mandated factors. "These statutory mandates clearly place the trial court's focus on the best interests of the child."
When parents have cooperated with the agency, achieved the goals of their permanency plans, and alleviated the circumstances that necessitated the child's original placement, the agency should continue to put forth efforts to reunite the child with her parents. However, "when the child welfare agency has made reasonable efforts to return a foster child to [...] her biological parent, but those efforts have failed, then the agency must redirect its efforts towards placing the child in an adoptive home."
Although a goal change to adoption is a step towards termination of parental rights, it does not in fact terminate parental rights. When the court allows [the agency] to change the goal to adoption, it has decided "[the agency] had provided adequate services to the parent but that he/she is nonetheless incapable of caring for the child and that, therefore, adoption is now the favored disposition." Once the goal is changed to adoption, [the agency] is not required to provide further services.
In re S.B., 943 A.2d at 978 (citations omitted; emphasis in original).
¶ 13 Herein, we find that the purpose sought to be achieved by both ASFA and this state's Juvenile Act (reunification when possible) was impeded when it was *618 established as a fact that M.S. was exposed to sexual abuse at the hands of her siblings while under Appellant's care, which scenario remains intact despite Appellant's awareness of the same. See In re R.P., L.P., 957 A.2d at 1217 ("[W]hen determining whether a parent is providing a minor with proper care and control [...] the caretaker's acts and omissions should weigh equally. The parental duty extends beyond mere restraint from actively abusing a child; rather, there exists a duty to protect the child from the harm that others may inflict." (emphasis in original) (quoting In the Interest of JOV, 454 Pa.Super. 630, 686 A.2d 421, 423 (1996))); see also In re C.M., 882 A.2d 507, 513 (Pa.Super.2005) ("[W]e must accept the facts as found by the trial court unless they are not supported by the record."); In re C.B., 861 A.2d 287, 295 (Pa.Super.2004), appeal denied, 582 Pa. 692, 871 A.2d 187 (2005); In re R.T., 778 A.2d 670, 678 (Pa.Super.2001) (quoting In Interest of Lilley, 719 A.2d 327, 334 n. 5 (Pa.Super.1998)), appeal denied, 568 Pa. 618, 792 A.2d 1254 (2001).
¶ 14 Appellant would appear to espouse the position that setting the initial goal at adoption in this case would allow ECOCY to "give up" on her before providing any services or making any attempts at reunification, a result not sanctioned either by the ASFA or the Juvenile Act. Appellant has had nearly twelve years to remedy the abusive behavior endured by M.S., and her family as a whole, yet she has failed to take the initiative to remedy the situation. If anyone has "given up," clearly it is not ECOCY, but rather, it is Appellant, as her apathy and indolence in taking corrective measures are the root problems of this case, which smack squarely in the face of achieving M.S.'s best interests. See In the Interest of D.P., 2009 PA Super 86, 972 A.2d 1221 (2009) (Appellate court, consistent with ASFA and Pennsylvania's Juvenile Act, upheld the dual purposes of reunification and adoption rather than merely unification; disposition predicated upon, "The uncontested facts[, which] demonstrate[d] that Mother [...] failed to provide adequate supervision for the children. [...] `It is not reasonable to suggest that after [many] fruitless years of providing services to [Mother] that the Agency should be expected to continue providing the same services over and over again.' [...] [B]ecause of Mother's actions and omissions, these three children [...] have suffered [...] because Mother placed her self-interest above the duties of being a responsible parent to her children. Mother has been given more than sufficient time to become a dutiful parent. The best interest of these children will be served by discontinuing further attempts at reunification with Mother [...]." (quoting Trial Court Opinion, 10/9/08, at 25-28)); In re S.B., supra. Accordingly, in light of the totality of the circumstances, we affirm the trial court's order.
¶ 15 Order affirmed.
¶ 16 DONOHUE, J. files a Dissenting Opinion.
DISSENTING OPINION BY DONOHUE, J.:
¶ 17 The learned Majority's resolution of this case may appear to be more palatable under the facts presented here, but in my view, in order to achieve it, the Majority both ignores the clear statutory mandates of the Pennsylvania Juvenile Act, 42 Pa. C.S.A. § 6301 et seq., and reaches its own findings of fact that lack any support in the record on appeal. Contrary to the Majority's decision to select the resolution it considers to be the most just, this Court is limited by the applicable statutory language in section 6302 of the Juvenile Act, and it is up to the Pennsylvania Legislature to modify the definition of "aggravated *619 circumstances" to include conduct by a co-habitating sibling (or other third party), or to otherwise provide trial courts with the option of establishing adoption as the initial permanency goal even in the absence of aggravated circumstances, if it so chooses. Because I believe the Majority has clearly overstepped its bounds, I respectfully dissent.
¶ 18 In 1997, Congress enacted the Adoption and Safe Families Act ("ASFA"), 42 U.S.C. §§ 671 et seq., to improve the lives of child in foster care. As a general matter, the ASFA encourages states to promote the reunification of foster care children with their families when possible:
(B) [E]xcept as provided in subparagraph (D), reasonable efforts shall be made to preserve and reunify families
(i) prior to the placement of a child in foster care, to prevent or eliminate the need for removing the child from the child's home; and
(ii) to make it possible for a child to safely return to the child's home[.]
42 U.S.C. 671(a)(15)(B).
¶ 19 An exception to the goal of reunification is in circumstances where there are "aggravated circumstances" in the home, including abandonment, torture, and/or chronic or sexual abuse:
(D) reasonable efforts of the type described in subparagraph (B) shall not be required to be made with respect to a parent of a child if a court of competent jurisdiction has determined that
(i) the parent has subjected the child to aggravated circumstances (as defined in State law, which definition may include but need not be limited to abandonment, torture, chronic abuse, and sexual abuse)[.]
42 U.S.C. 671(a)(15)(D)(i).
¶ 20 Due to the requirements of the ASFA, and to obtain vital federal funding to assist with the care of foster children, in 1998 our Legislature amended the Pennsylvania Juvenile Act. In re C.B., 861 A.2d 287, 295 (Pa.Super.2004), appeal denied, 582 Pa. 692, 871 A.2d 187 (2005); In re Adoption of A.M.B., 812 A.2d 659 (Pa.Super.2002). Like the ASFA, the Juvenile Act now provides that the focus will be on reunifying families "whenever possible":
(b) Purposes.This chapter shall be interpreted and construed to effectuate the following purposes:
(1) To preserve the unity of the family whenever possible or to provide another alternative permanent family when the unity of the family cannot be maintained.
42 Pa.C.S. § 6301(b)(1). Consistent with the ASFA, where a trial court finds the existence of aggravated circumstances, it must make an initial determination as to whether all efforts at family reunification should cease immediately:
(c.1) Aggravated circumstances.If the county agency or the child's attorney alleges the existence of aggravated circumstances and the court determines that the child is dependent, the court shall also determine if aggravated circumstances exist. If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family shall be made or continue to be made and schedule a dispositional hearing as required by section 6351(e)(3) (relating to disposition of dependent child).
*620 42 Pa.C.S.A. § 6341(c.1). Under the Juvenile Act, the primary goals for children in foster care are "safety, permanency and well-being," In re R.T., 778 A.2d 670, 678 (Pa.Super.2001) (quoting In Interest of Lilley, 719 A.2d 327, 334 n. 5 (Pa.Super.1998)), appeal denied, 568 Pa. 618, 792 A.2d 1254 (2001), and thus where aggravated circumstances exist courts must not place an "inappropriate focus on protecting the rights of parents." C.B., 861 A.2d at 295.
¶ 21 Turning to the facts of this case, ECOCY did not plead the existence of aggravated circumstances in its dependency petition for M.S. Moreover, in its written opinion, the trial court did not make a factual finding that aggravated circumstances exist with respect to M.S. Nor could it. Section 6302 of the Juvenile Act defines "aggravated circumstances" in relevant part as a situation in which "[t]he child or another child of the parent has been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated physical neglect by the parent." 42 Pa.C.S.A. § 6302 (emphasis added). While all parties agree that M.S. has been the victim of sexual violence,[1] there is no evidence that the sexual violence was perpetrated by a parent. The Juvenile Act does not define sexual violence by siblings to constitute aggravated circumstances.
¶ 22 This lack of aggravated circumstances is significant. While section 6341(c.1), quoted above, permits the trial court to consider the immediate termination of attempts at reunification between a child in foster care and her family when aggravated circumstances are found to exist, the Juvenile Act contains no similar authorization in the absence of aggravated circumstances. Instead, after a child has been adjudicated dependent and removed from the home, the Juvenile Act provides only that the trial court must conduct a permanency hearing within six months of the removal "for the purpose of determining or reviewing the permanency plan of the child, the date by which the goal of permanency for the child might be achieved and whether placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child." 42 Pa.C.S.A. § 6351(e)(1). From this text, it is clear that at the first permanency hearing, the trial court must determine whether an initial permanency goal has been established. If no permanency goal has previously been established, then the trial court must establish one.
¶ 23 In contrast with section 6341(c.1), the Juvenile Act contains no provision authorizing a trial court to consider the immediate termination of efforts at family reunification in the absence of aggravated circumstances. By setting the initial permanency goal at adoption, however, this is precisely what the trial court did in this case. As this Court has recognized, once a trial court sets the permanency goal at adoption, the local child welfare agency has no further obligation to provide the parents with any services to assist with possible reunification. S.B., 943 A.2d at 978; see also In re N.W., 859 A.2d 501, 509 (Pa.Super.2004) (holding that a trial court's decision to change the goal to adoption "allows CYS to give up on the parents").[2]
*621 ¶ 24 Setting the initial goal at adoption in this case would allow ECOCY to "give up" on Appellant R.S. ("Mother") before providing her with any services or making any attempts at reunification, a result not sanctioned either by the ASFA or the Juvenile Act. This Court has repeatedly held that the Commonwealth is required to make reasonable efforts to promote reunification between a child and her parents. See, e.g., In re I.J., 972 A.2d 5 (Pa.Super.2009); In re: Adoption of R.J.S., 901 A.2d 502, 507 (Pa.Super.2006). Here, as a matter of law, the ECOCY should be required to make reasonable efforts to reunite M.S. with her Mother before petitioning the trial court to change the permanency goal to adoption and/or filing a petition to terminate Mother's parental rights.
¶ 25 The Majority describes this statutory analysis as "myopic" and contends that nothing prevented the trial court from setting the initial permanency goal as adoption.[3] In this regard, however, the Majority does not reference any provision of the ASFA or the Juvenile Act in support of this position. The Majority instead states merely that it "does not read the [ASFA] and the [Juvenile Act] so narrowly as to turn a blind eye to the realities of this case", Majority Opinion at 5, without making reference to any provision of either the ASFA and/or the Juvenile Act that permits a trial court to ignore the fundamental goal of family reunification in favor of immediate adoption in the absence of aggravated circumstances. The Majority likewise cites to no prior decision of any Pennsylvania appellate court, as it does not appear that either our Supreme Court or this Court has ever held that a trial court may establish the initial permanency goal at adoption in the absence of aggravated circumstances.
¶ 26 I likewise take issue with the Majority's conclusion that "[i]n the case of the ASFA, the presence of `aggravated circumstances' sufficient to justify termination of parental rights merely requires that, `the parent has subjected the child to aggravated circumstances [such] as [...] sexual abuse [...].' 42 U.S.C. § 671(a)(15)(D)(i). It is beyond cavil that [Mother] `has subjected' M.S. to sexual abuse by failing to supervise her sons,...." Majority Opinion at 616.
¶ 27 First, section 671 of the ASFA does not involve the termination of parental rights. Instead, section 671 sets forth specific requirements with which states must comply in connection with the placement of children in foster careincluding the obligation to make reasonable efforts at family reunification in the absence of aggravated circumstances. See 42 U.S.C. 671(a)(15)(B) & (D) (quoted hereinabove). Termination of parental rights is not at *622 issue in this appeal, as this case instead involves only ECOCY's request to establish M.S.'s initial permanency goal at adoption while she is in foster care.
¶ 28 Second, the Majority's suggestion that section 671(a)(15)(D)(i) of the ASFA contains a definition of "aggravated circumstances" that may be applied in this case lacks any proper basis. Removing the ellipses in the Majority's abbreviated quotation, section 671(a)(15)(D)(i) provides that no attempts at reunification are necessary if "the parent has subjected the child to aggravated circumstances (as defined in State law, which definition may include but need not be limited to abandonment, torture, chronic abuse, and sexual abuse)". 42 U.S.C. § 671(a)(15)(D)(i) (emphasis added). As such, the ASFA does not contain a definition of "aggravated circumstances," instead deferring to state law to provide one. Pennsylvania's definition of the term does not contain the "has subjected" language relied upon so heavily by the Majority, and instead, as explained hereinabove, expressly limits "aggravated circumstances" resulting from sexual abuse to acts committed "by a parent." The Majority admits that in this case there are no aggravated circumstances attributable to Mother in the form of sexual abuse of M.S. Majority Opinion at 614-15.
¶ 29 Third, not only is it not "beyond cavil" that Mother has subjected M.S. to sexual abuse by failing to supervise her sons, there is little evidence of record to support such a factual finding. The trial court made no finding of fact that Mother was aware that the siblings were sexually abusing M.S., or that any of her actions vis-à-vis M.S. amounted to aggravated physical neglect. As such, the only relevant evidence in this regard was the trial court's reference to an allegation by one of the brothers that Mother was aware of the sexual abuse. Trial Court Memorandum at 1. None of the brothers testified at the adjudicatory hearing, however, and it is unclear when the statement was made or whether it was made under oath. In any event, neither the master at the adjudicatory hearing nor the trial court ever ruled on the credibility of this allegation. To the contrary, neither the master nor the trial court found that Mother's decision to leave M.S. in the care of her 15 year-old brother while she was at work amounted to aggravated physical neglect.
¶ 30 Based upon the record on appeal, I do not disagree with the Majority that the chances for reunification between Mother and M.S. are very slight, and that the foremost concern here is the permanency arrangement that best suits M.S.'s emotional and physical well-being. Trial Court Memorandum, 9/29/08, at 4. However, in light of the absence of "aggravated circumstances" as defined under the Juvenile Act and the otherwise pervasive statutory scheme under the Juvenile Act to promote family reunification, I conclude that it was error for the trial court to establish the initial permanency goal in this case at adoption, thus relieving ECOCY of the obligation to provide any services to Mother to promote reunification between parent and child.[4] As a result, I would reverse the trial court's decision and remand with instructions that the initial permanency goal for M.S. be set at reunification. This permanency goal could then be changed to adoption if and when the trial court determines that ECOCY "has provided adequate services to the parent but that he/she is nonetheless incapable of caring for the child." S.B., 943 A.2d at 978; In re A.L.D., 797 A.2d 326, 339 (Pa.Super.2002).
¶ 31 It is the function of this Court to determine the legislative intent of an enactment *623 and give effect to that intention. Commonwealth v. Reefer, 816 A.2d 1136, 1141 (Pa.Super.), appeal denied, 574 Pa. 759, 831 A.2d 599 (2003); Commonwealth v. Campbell, 758 A.2d 1231, 1233-34 (Pa.Super.2000). In this regard, the Pennsylvania Legislature has limited the definition of "aggravated circumstances" in 42 Pa.C.S.A. § 6302 to acts of sexual violence perpetrated by the parents, and has required a finding of "aggravated circumstances" before establishing an initial permanency goal at adoption. It is not this Court's role to substitute our judgment for that of the Pennsylvania Legislature, and because in my view the Majority has done so, I respectfully dissent.
NOTES
[1] Per section 6302, rape and incest are types of "sexual violence," and sexual violence by a parent constitutes an aggravated circumstance.
[2] Contrary to the Majority's contention that Mother "espouse[s] the position that setting the initial goal at adoption in this case would allow ECOCY to `give up' on her before providing any services or attempts at reunification," Majority Opinion at 618, this position (re: "giving up") is one that has repeatedly and without exception espoused by this Court in precisely this circumstance (setting the goal at adoption). See, e.g., S.B., 943 A.2d at 978; In re N.W., 859 A.2d 501, 509.
[3] The Majority argues that "the initial permanency goal for M.S. need not be set at reunification, especially since ECOCY has provided any and all reasonable services toward this end without success." Majority Opinion at 614-15. The record on appeal, however, is devoid of any support for such an assertion. To the contrary, the record is clear that ECOCY took M.S. into custody immediately after the allegations of sexual abuse by the brother came to light, arguing successfully at the initial detention hearing that the lack of any reunification services prior to removal from the home was justified under the facts presented. There is likewise no evidence that ECOCY provided any reunification services after M.S.'s removal. In light of the trial court's establishment of the initial permanency goal at adoption, ECOCY now has no legal obligation to provide any such services to Mother.
[4] We note that it is also M.S.'s stated desire to be reunited with her Mother if possible.