J. S76015/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF:  B.H., A MINOR   :   IN THE SUPERIOR COURT OF
                                     :         PENNSYLVANIA
APPEAL OF:  S.H.-S., NATURAL         :
MOTHER,                              :
                                     :      No. 943 WDA 2014
                    Appellant        :


Appeal from the Order, May 8, 2014,
in the Court of Common Pleas of Erie County
Domestic Relations Division at No. CP-25-DP-0000033-2014


BEFORE:  FORD ELLIOTT, P.J.E., PANELLA AND OLSON, JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JANUARY 06, 2015**

S.H.-S ("Mother") appeals from the order changing the permanency goal in dependency proceedings for her child to adoption.  Upon review, we affirm.

B.H. ("Child") was born in April of 2004.  Pursuant to a private custody agreement, Child's maternal grandmother ("Grandmother") was given primary custody of Child when Child was five months old.  Child's father has never been involved in Child's life.  Mother has not participated in the parenting of Child since Grandmother became Child's primary caregiver.

On January 7, 2014, Erie County OCY ("OCY") received a referral regarding possible physical or sexual abuse of Child.  On March 4, 2014, Child was removed from Grandmother's care due to concerns that Grandmother allowed her son, who was an indicated perpetrator of sexual

abuse, to have access to and care for Child. Following a shelter care hearing on March 6, 2014, Child was to remain in protective custody.

On April 11, 2014, Child was adjudicated dependent. A dispositional hearing occurred on May 5, 2014. At the conclusion of the hearing, the trial court ordered the permanency goal changed to adoption with a concurrent placement goal of placement with a legal custodian (relative). The trial court filed its written order on May 8, 2014. Mother filed a notice of appeal on June 9, 2014,[1] but failed to file a concurrent statement of errors complained of on appeal. Instead, counsel filed a statement of intention to file an **Anders** brief. The trial court filed a letter on June 18, 2014, advising it would not be filing a Rule 1925(a) opinion.

On August 4, 2014, Mother's counsel filed a petition for remission of the record and remand to the trial court claiming that a subsequent review of the record now revealed a non-frivolous issue. Appellant requested a remand for the filing of a Rule 1925(b) statement by counsel and a Rule 1925(a) opinion by the trial court. By **per curiam** order dated August 14, 2014, this court did not remand the case, but rather ordered appellant to file and serve within 14 days a statement of errors complained of on appeal. The trial court was ordered to file a Rule 1925(a) opinion within 30 days of

---

[1] The 30-day appeal period is extended two days because the 30th day fell on Saturday, June 7, 2014. **See** Pa.R.A.P., Rule 903(a), 42 Pa.C.S.A.; 1 Pa.C.S.A. § 1908.

the filing of appellant's statement of errors. Appellant complied and filed her statement on August 22, 2014, and the trial court has filed its opinion.

Mother presents the following issues for our review:

1. Whether the trial court had authority to set the goal as adoption at the dispositional stage?

2. Whether there was sufficient evidence to set the goal as adoption?

3. Whether there was sufficient evidence to terminate Mother's visitation with [Child]?

Mother's brief at 2.

> When we review a trial court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion. *In re G.P.-R.*, 851 A.2d 967, 973 (Pa.Super.2004). In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was "manifestly unreasonable," that the court did not apply the law, or that the court's action was "a result of partiality, prejudice, bias or ill will," as shown by the record. *Id.* (citation omitted). We are bound by the trial court's findings of fact that have support in the record. *Id.* The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. *In re Adoption of R.J.S.*, 901 A.2d 502, 506 (Pa.Super.2006). When the trial court's findings are supported by competent evidence of record, we will affirm "even if the record could also support an opposite result." *Id.* (quoting *In re In the Interest of S.H.*, 879 A.2d 802, 806 (Pa.Super.2005), *appeal denied*, 586 Pa. 751, 892 A.2d 824 (2005)).

*In re N.C.*, 909 A.2d 818, 822 (Pa.Super. 2006).

Mother first contends the trial court did not have the authority to order a goal change at the dispositional hearing. Mother relies on the Juvenile Act, 42 Pa.C.S.A. § 6301-6375, and the Federal Adoption and Safe Families Act ("ASFA"), 42 U.S.C. § 671-679, as support for her position that reunification of children with parents should be the goal when possible, and that she was not afforded adequate reunification services.

In *In re M.S.*, 980 A.2d 612 (Pa.Super. 2009), in discussing the Juvenile Act and ASFA, we explained:

> Both statutes are compatible pieces of legislation seeking to benefit the best interest of the child, not the parent. . . . ASFA promotes the reunification of foster care children with their natural parents when feasible. . . . Pennsylvania's Juvenile Act focuses upon reunification of the family, which means that the unity of the family shall be preserved "whenever possible."

*Id.* at 615.

As such, child welfare agencies are required to make reasonable efforts to return a foster child to his or her biological parent. *In re N.C.*, 909 A.2d at 823. Consistent with the statutory purposes, the policy underlying both the Juvenile Act and ASFA is to prevent children from languishing indefinitely in foster care, with its inherent lack of permanency, normalcy, and long-term parental commitment. *See In re C.B.*, 861 A.2d 287, 295 (Pa.Super. 2004), *appeal denied*, 871 A.2d 187 (Pa. 2005). Furthermore, the amendments to the Juvenile Act, as required by the ASFA, place the focus of dependency proceedings on the child. *C.B.*, *supra*.

Safety, permanency, and well-being of the child must take precedence over all other considerations, including the rights of the parents. *Id.*

Mother argues the trial court erred when it changed the permanency goal to adoption at the dispositional hearing, approximately one month after Child was adjudicated dependent. Mother points out that a court has the authority to order a goal of adoption under two circumstances: (1) if the court has found aggravating circumstances exist and finds no new or continuing reasonable efforts to reunify are required; or (2) if the court has found that the parent has been provided adequate services and is still incapable of caring for his/her child. Mother argues there were no aggravating circumstances in her case nor have adequate services been provided to her. (Mother's brief at 5-6.)

Instantly, the trial court opined:

> There is nothing in the Juvenile Act, case law or rules of procedure that prevent an agency from requesting a goal change sooner, nor is there law in Pennsylvania prohibiting this court from ordering the agency to change the permanency goal at any time it is clear reunification is not viable and another permanency goal for the child is more appropriate.

Trial court opinion, 9/16/14 at 8. The facts are straightforward. Mother handed over custody and care of Child to Grandmother when Child was five months old, and for the next ten years did not actively participate in the parenting of Child. At the dispositional hearing on May 5, 2014, Mother did not bother to appear. When Mother's counsel was asked why she was not at

the hearing, he responded, "I can't speak to that, but I was just told by her that there was a previously scheduled business matter she was attending to." (Notes of testimony, 5/4/14 at 6.)

The trial court noted:

> [T]he absence of both parents at the dispositional hearing, at a minimum, made it difficult to conduct a penetrating inquiry into how the parents intended to remedy the problems that led to placement, and is the major reason the dispositional hearing was brief. Their disregard of court dates and failure to appear to show some interest in the welfare of their child is inexcusable and supports more than any other evidence presented the conclusion adoption is the appropriate goal.

Trial court opinion, 9/16/14 at 10.

While the legislature has directed interpretation of the Juvenile Act to effectuate the purpose of preserving family unity when possible, it also compels provision of "another alternative permanent family when the unity of the family cannot be maintained." *See* 42 Pa.C.S.A. § 6301(b)(1). As this court stated in *In re J.S.W.*, 651 A.2d 167, 170-171 (Pa.Super. 1994), "While deference must be given to this laudatory goal [preservation of the family], deference should not become rigid adherence to the principle regardless of the circumstances; otherwise, adoption will never be an option regardless of the family situation and the best interests of the child." Here, there was no family to preserve. Mother walked away from Child when she was an infant and in the following ten years, she showed minimal interest, if at all. As additional proof of Mother's lack of interest, she failed to attend

the dispositional hearing citing a business matter she needed to tend to. Based on this record, we discern no abuse of discretion by the trial court in changing Child's goal to adoption.

In Mother's second argument, she complains that even if the trial court had the authority to order a goal change, the facts did not support setting the goal to adoption. We disagree. Even though Child was given to Grandmother when she was five months old by a private custody agreement, the fact remains Child has been out of Mother's care for 10 years. The trial court determined "Mother has had no part in parenting [Child] for most of her life." Trial court opinion, 9/16/14 at 9.

The trial court conducted an *in camera* interview with Child in the presence of her guardian *ad litem*. The court stated it considered what Child had to say and, while noting that it was not controlling, gave it some weight because "she is old enough to at least express her views and they seem to be well thought out for a 10-year-old." (Notes of testimony, 5/4/14 at 12.)

Child's guardian *ad litem* testified:

> [Child] does not want to have contact with her mother. She feels very strongly about that. She says that she does not -- that her mother has lied to her in the past and she doesn't trust her mother. And I think even though she's a young child we have to, basically, look at her wishes in terms of the contact with the mother because I'm not -- I really don't believe it would be in her best interest to force her to have contact with her if she doesn't want it.

Notes of testimony, 5/4/14 at 9.

Additionally, we note the record indicates that the trial court was familiar with Mother as she had another case in front of the trial court that resulted in Mother's other child being placed with relatives due to Mother's lack of any progress on her court-ordered permanency plan. Clearly, the trial court did not review this case in a vacuum. We will not disturb the trial court's decision as there is support for it in the record.

Last, Mother argues the trial court abused its discretion by failing to order visitation. Mother claims the trial court erred when it made no mention of why it would be in Child's best interest to terminate visitation with her. The trial court opined: "Mother's demonstrated lack of concern for the well-being of her daughter does not entitle her to visits. Mother displays no interest in changing her behavior or in remedying the conditions which would allow reunification with her daughter." (Trial court opinion, 9/16/14 at 10.) The trial court also pointed out Mother has no bond whatsoever with Child. (*Id*.) Based on the foregoing, it is reasonable to infer that because Mother has no bond with Child, it would not be in Child's best interest to have to visit with Mother. After careful review of the entire record in light of prevailing law, we conclude Mother's view that she should have visitation is not supportable.

For all of the above reasons, and after careful review of the record, we conclude that the trial court committed no error in changing the goal to adoption. Accordingly, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/6/2015