J-S40043-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: J.A., A MINOR

IN THE SUPERIOR COURT OF PENNSYLVANIA

APPEAL OF: F.A., NATURAL FATHER

No. 406 WDA 2015

Appeal from the Order entered February 12, 2015,
in the Court of Common Pleas of Erie County, Criminal
Division, at No(s): CP-25-DP-0000183-2014

BEFORE:  FORD ELLIOTT, P.J.E., DONOHUE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STRASSBURGER, J.:           **FILED AUGUST 31, 2015**

F.A. (Father) appeals from the order entered February 12, 2015, in the Court of Common Pleas of Erie County, which changed the permanency goal of his minor daughter, J.A. (Child), born in January of 2014, to adoption.[1] After careful review, we affirm.

On September 16, 2014, Mother took Child to the hospital, where it was determined that Child had suffered a spiral fracture to her arm.  Mother provided several inconsistent explanations of how this injury took place, none of which was medically acceptable.  As a result of these events, Child was placed in foster care.  She was adjudicated dependent on October 14, 2014.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Child's mother, S.F. (Mother), also has appealed from the subject order. The disposition of her appeal is by separate memorandum.

On December 18, 2014, the Erie County Office of Children and Youth (the Agency) filed a petition for permanency hearing, in which it recommended terminating Father's parental rights to Child. A permanency hearing was held on February 6, 2015. Following the hearing, on February 12, 2015, the court entered its order changing Child's permanency goal to adoption. Father timely filed a notice of appeal, along with a concise statement of errors complained of on appeal.

Father now raises the following issue for our review.

> 1. Did the juvenile court commit an abuse of discretion and/or error of law when it determined that the concurrent placement goal of reunification/adoption was no longer feasible, dispensed with the concurrent placement goal of reunification after only four months and directed the Agency to provide no further services and/or visitation to [Father]?

Father's brief at 6 (unnecessary capitalization omitted).

We consider this issue mindful of the following.

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

> Pursuant to [42 Pa.C.S.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia:* (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for

the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011) (citations and quotation marks omitted).

Instantly, Father argues that the juvenile court abused its discretion and/or erred by changing Child's permanency goal to adoption, because the court did so after only several months. Father's brief at 12. Father contends that he did not have sufficient time to demonstrate that he is capable of parenting Child, and that he did not receive reasonable reunification services from the Agency. *Id.* at 12-14. Father also emphasizes that one of the primary purposes of the Juvenile Act is promoting reunification, and that he continues to receive services with respect to his other child, A.A., who is not involved in the instant appeal. *Id.* at 12-13, 15-16.

In its opinion pursuant to Pa.R.A.P. 1925(a), the juvenile court explained that it changed Child's permanency goal to adoption because, *inter alia*, Father has demonstrated that he will not, or cannot, remedy his domestic violence issues to the extent that he can safely parent Child. Juvenile Court Opinion, 3/31/2015, at 17. The court also emphasized Father's alcohol abuse. *Id.* The court stated that nothing in the Juvenile Act

prohibited it from changing Child's permanency goal at the time that it did, and that the fact that Father may be receiving services with respect to A.A. has no bearing on the instant matter. *Id.* at 14.

First, we agree with the juvenile court that there is no minimum period of time that a child's goal must be set at reunification before it can be changed. *See, e.g.*, *In re M.S.*, 980 A.2d 612 (Pa. Super. 2009), *appeal denied*, 985 A.2d 220 (Pa. 2009). In *M.S.*, a juvenile court set the child's initial permanency goal as adoption, despite the fact that aggravated circumstances had not been found. A panel of this Court affirmed, explaining that,

> …. the lack of any aggravating circumstances attributable to the parent Appellant … did not prohibit the trial court from authorizing immediate termination of family unification. Stated otherwise, the initial permanency goal for M.S. need not be set at reunification, especially since [the Agency] has provided any and all reasonable services to assist Appellant toward this end without success.

*Id.* at 615-16.

Second, after a thorough review of the record in this matter, we conclude that the trial court committed no abuse of discretion in changing Child's permanency goal to adoption. During the February 6, 2015 permanency review hearing, Agency caseworker, Sharon Slubowski, testified that Father has a history of engaging in domestic violence. N.T., 2/6/2015, at 15. Ms. Slubowski noted that Father's previous girlfriend filed for Protection From Abuse (PFA) orders against him in 1996 and 2001. *Id.* at

- 4 -

17. Ms. Slubowski also discussed a more recent incident which took place in December of 2013, while Mother was pregnant with Child. *Id.* at 16. During that incident, Father "got on top" of Mother and punched her in the face. *Id.* As a result, Father was arrested and incarcerated for an unspecified period of time. *Id.* at 15. Mother filed for a PFA order against Father in September of 2014. *Id.* at 16. Ms. Slubowski did not describe this incident in detail, but stated that it involved "[m]uch the same thing. . . . If I can't have you nobody else will, that kind of thing." *Id.* at 16-17. Finally, Ms. Slubowski received allegations that Father had assaulted Mother on December 31, 2014, but Ms. Slubowski was not able to corroborate this information. *Id.* at 18.

Ms. Slubowski further testified that Father has been attending a domestic violence intervention program, but that he has done so inconsistently. *Id.* at 7. At the time of the hearing, Father no longer was permitted to attend the program, due to his prior bad behaviors. *Id.* at 7-9. Ms. Slubowski specified that Father used "foul language" during class, that he used his cellphone during class, and that "they smelled alcohol on his breath a couple times." *Id.* at 8. In order to return to the program, Father would need to meet with the director of the providing agency. *Id.* at 9. Relatedly, Ms. Slubowski explained that Father has either failed to attend most of his drug screens, or tested positive for alcohol. *Id.* at 10-11. Ms.

Slubowski expressed concern that Father becomes violent when he drinks. *Id.* at 11.

With respect to mental health, Ms. Slubowski testified that Father is enrolled in Safe Harbor Behavioral Health. *Id.* at 12. However, Ms. Slubowski's records indicated that Father does not attend his scheduled appointments. *Id.* at 13. With respect to parenting and visitation, Father was referred to the Time Limited Family Reunification Program. *Id.* at 14. Ms. Slubowski explained that Father "did come to a few" meetings, but that he is "not following the program, and he's not achieving visits, so we can't assess his progress in the areas that have been identified." *Id.* at 15. Ms. Slubowski noted that Father has not "achieved a visit" since October 30, 2014, due to his failure to maintain sobriety. *Id.* at 13.

Father testified that he has been "going to domestic violence classes, going to the fatherhood classes, and anything you asked." *Id.* at 70. Father admitted that he was asked to leave a domestic violence class on January 24, 2015, but denied that he did anything inappropriate. *Id.* at 71. Father also admitted that he missed "a few" a random drug screens. *Id.* at 66. Father stated that he now realizes that he must attend all of his screens, and that he must be sober. *Id.* at 66, 70. Father stated that he will be participating in a drug and alcohol assessment in about a week. *Id.* at 65, 70.

Thus, the record demonstrates that Father has a history of engaging in violent and abusive behavior, and that Father has made little, if any, effort to remedy this issue. Father also has failed to address his mental health concerns. Notably, Father has been unable to visit with Child since October of 2014 due to his alcohol use. Rather than end his alcohol consumption in order to visit with Child, Father has continued to drink. Based on this evidence, it was reasonable for the court to conclude that Child's permanency goal should be changed to adoption. Accordingly, we affirm the order of the juvenile court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2015