J-S61002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: E.C.K., A MINOR

APPEAL OF: E.N.K., FATHER

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 766 MDA 2015

Appeal from the Order entered April 2, 2015
In the Court of Common Pleas of Centre County
Juvenile Division, at No(s): CP-14-DP-0000046-2012

BEFORE:  PANELLA, J., WECHT, J., and STRASSBURGER*, J.

MEMORANDUM BY PANELLA, J.:                  **FILED NOVEMBER 24, 2015**

E.N.K. ("Father") appeals from the order entered on April 2, 2015, changing the placement goal of his minor daughter, E.C.K. ("Child"), born in January 2009, from "Return Home" to "Planned Permanent Living Arrangement/Long-Term Foster Care."  We affirm.

In its adjudication filed May 12, 2015, the trial court set forth the factual background and procedural history of this appeal.  Father and C.L.K. ("Mother") are the biological parents of Child.  The parents are no longer together.

Centre County Children and Youth Services ("CYS") became involved with the family in 2010.  On January 8, 2013, the trial court found Child to be a dependent child pursuant to the Pennsylvania Juvenile Act.  Child continued to live with Mother until May 1, 2014. Child was the placed in foster care when Mother entered The Meadow Psychiatric Center.

---

* Retired Senior Judge assigned to the Superior Court.

Father requested to be considered as a placement option for Child, but reunification services were not provided for Father because Father was living in North Carolina at the time and he had no regular visits with Child since 2012. During Child's placement with her foster family, Father maintained regularly scheduled phone calls with her, but only visited—once. Father attempted to schedule visits with Child, but failed to follow the required procedures or cancelled the visits. Father relocated to Centre County, Pennsylvania, within a week and a half of the hearing. Father is now living with his new wife and her two children.

Child has extremely negative reactions to contact with Father. Father's sole visit with Child occurred on December 20, 2014, in the presence of Pamela McCloskey, M.Ed., Child's former therapist, and a CYS staff member. Child did not want to see Father. When she did see him, she was fearful of him and clung to her caseworker, and would not look at Father. Father acted appropriately during the visit, and eventually Child played with Father.

Father requests that Child's goal remain "Return to Home." CYS, however, recommended the change of Child's goal to "Planned Permanent Living Arrangement/Long-Term Foster Care," and Child's Guardian *ad litem* supports the change. Child has been in foster care for over eleven months, and the current change is considered to be a step toward adoption.

Child is only six years old. She is comfortable and content with her foster family. Child has adapted well to life in her foster home. She has no disabilities or difficulties and is living with a foster family who is willing to provide a permanent home for her. Child looks to her foster parents for her personal needs, protection, and safety.

On April 2, 2015, following a hearing, the trial court changed Child's placement goal from "Return Home" to "Planned Permanent Living Arrangement/Long-Term Foster Care." Father filed a timely Notice of Appeal.

Father contends that the trial court erred in changing the placement goal. *See* Father's Brief, at 8. We disagree.

We review Father's issue according to the following standard.

> When reviewing an order regarding the change of a placement goal of a dependent child pursuant to the Juvenile Act, 42 Pa. C.S.A. § 6301, *et seq.*, our standard of review is abuse of discretion. When reviewing such a decision, we are bound by the facts as found by the trial court unless they are not supported in the record.

*In re S.B.*, 861 A.2d 974, 976 (Pa. Super. 2004) (citations omitted). An abuse of discretion is not a mere error in judgment. *See In re A.K.*, 936 A.2d 528, 532-533 (Pa. Super. 2007 (citation omitted). Rather, an appellant must show that the trial court's judgment was "manifestly unreasonable," that the trial court did not apply the law, or that its actions were the result of partiality, prejudice, bias or ill will. *Id*. (citation omitted). Further,

credibility is exclusively for the trial court to determine, and it is free to believe all, part, or none of the evidence. *See id*. When the record supports the trial court's findings, we will affirm. *See id*.

A goal change request is governed by the Juvenile Act, 42 Pa.C.S.A. § 6301 *et seq.*, which was amended in 1998 to conform to the federal Adoption and Safe Families Act ("ASFA"), 42 U.S.C. § 671 *et seq*. *See In re M.S.*, 980 A.2d 612, 615 (Pa. Super. 2009). We have recognized that "[b]oth statutes are compatible pieces of legislation seeking to benefit the best interest of the child, not the parent. . . . ASFA promotes the reunification of foster care children with their natural parents when feasible. . . . Pennsylvania's Juvenile Act focuses upon reunification of the family, which means that the unity of the family shall be preserved 'whenever possible.'" *Id*. (citing 42 Pa.C.S.A. § 6301(b)(1)). Accordingly, child welfare agencies are required to make reasonable efforts to return a foster child to his or her biological parent. *See In re N.C.*, 909 A.2d 818, 823 (Pa. Super. 2006).

When those efforts fail, the agency "must redirect its efforts towards placing the child in an adoptive home." *Id*. (citation omitted). We have stated that

> [w]hen a child is placed in foster care, after reasonable efforts have been made to reestablish the biological relationship, the needs and welfare of the child require [the child welfare agency] and foster care institutions to work toward termination of parental rights, placing the child with adoptive parents. It is

contemplated [that] this process realistically should be completed within 18 months.

*Id*. at 824 (emphasis omitted; brackets in original) (citations omitted).

At permanency review hearings for dependent children removed from the parental home, a trial court must consider the following factors.

**(f) Matters to be determined at permanency hearing.—**

At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6)  Whether the child is safe.

. . .

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or

continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

(i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

(ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

(iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

. . .

42 Pa.C.S.A. § 6351(f)(1)-(6), (9).

"These statutory mandates clearly place the trial court's focus on the best interests of the child." *In re S.B.*, 943 A.2d at 978 (citation omitted). We have stated "[s]afety, permanency, and well-being of the child must take precedence over **all** other considerations." *Id*. (citation omitted) (emphasis in original). Moreover, "the burden is on the child welfare agency . . . to prove that a change in goal would be in the child's best interest." *In re R.I.S.*, 36 A.3d 567, 573 (Pa. 2011) (citations omitted).

After our careful review of the record, we are satisfied the trial court properly addressed the issue concerning the Child's disposition to Planned Permanent Living Arrangement/Long-Term foster Care.

Originally, no services were planned or developed as they relate to Father. Father had not had regular contact with Child since 2012—although he was told that he needed to have short, consistent visits with Child to reestablish a relationship with her. Father's efforts were minimal. Father had only one visit with Child while she was in foster care.

At the time of the May 13, 2014 hearing, Father was residing in Roanoke, North Carolina, where he was employed. Father had attempted to schedule a meeting with Pam McCloskey, a counselor who worked with Child, but had to cancel a number of appointments due to work and transportation issues. Eventually, Father drove from North Carolina to meet with Ms. McCloskey. The visit occurred on December 20, 2014. Following the visit, Child did not want to speak to Father on the telephone, was fearful of Father, and did not understand how he fit into her life. Although Father did move to Pennsylvania following his visit with Child, there was no further contact between Father and Child.

Child is well-adjusted in foster care. Foster care provides Child with protection and safety and allows Child to reside with her half-brother, who is also placed with the same foster family.

The trial court did not err in changing the placement goal from "Return Home" to "Planned Permanent Living Arrangement/Long Term Foster Care." The evidence showed that it was in the best interest and welfare of the Child

to change the goal first to "Planned Permanent Living Arrangement/Long Term Foster Care, and then in the future to Adoption.

Order affirmed.

Judge Wecht joins the memorandum.

Judge Strassburger files a dissenting memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/24/2015