J-S61001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: E.C.K., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.L.K., MOTHER | No. 765 MDA 2015 |

Appeal from the Order entered April 2, 2015
In the Court of Common Pleas of Centre County
Juvenile Division, at No(s): CP-14-DP-0000046-2012

BEFORE:  PANELLA, J., WECHT, J., and STRASSBURGER[*], J.

MEMORANDUM BY PANELLA, J.                    **FILED OCTOBER 29, 2015**

C.L.K. ("Mother") appeals from the order entered on April 2, 2015, changing the placement goal of her minor daughter, E.C.K. ("Child") born in January 2009, from "Return Home" to "Planned Permanent Living Arrangement/Long-Term Foster Care."  We affirm.

The pertinent facts and procedural history are as follows.  Mother and E.N.K. ("Father") are the biological parents of Child.  The parents are no longer together.

Centre County Children and Youth Services ("CYS") became involved with the family in 2010.  On January 8, 2013, the trial court found Child to be dependent pursuant to the Pennsylvania Juvenile Act.  Child continued to live with Mother until May 1, 2014.  Child was then placed in foster care when Mother entered The Meadow Psychiatric Center.

---

[*] Retired Senior Judge assigned to the Superior Court.

The reunification services of Child by Mother began in July 2014 and ended in October 2014—as Mother no longer wanted to participate in the program. Mother continued to live with her abusive boyfriend and continued to visit Child regularly. Mother admitted that Child's needs would best be met by her foster parents. At the time, Father requested to be considered as a placement option for Child, but reunification services were not provided to Father because he was living in North Carolina and had no regular visits with Child since 2012.

Child is only six years old. She is comfortable and content with her foster family. Child has adapted well to life in her foster home. She has no disabilities or difficulties. Her foster family is willing to provide a permanent home for her. Child looks to her foster parents for her personal needs, protection, and safety.

On April 2, 2015, following a hearing, the trial court changed Child's placement goal from "Return Home" to "Planned Permanent Living Arrangement/Long-Term Foster Care." Mother filed a timely Notice of Appeal.

Mother contends that the trial court erred in changing the placement goal. *See* Mother's Brief, at 8. We disagree.

We review Mother's issue regarding the change of goal according to the following standard.

> When reviewing an order regarding the change of a placement goal of a dependent child pursuant to the Juvenile Act, 42 Pa.

C.S.A. § 6301, *et seq.*, our standard of review is abuse of discretion. When reviewing such a decision, we are bound by the facts as found by the trial court unless they are not supported in the record.

*In re S.B.*, 861 A.2d 974, 976 (Pa. Super. 2004) (citations omitted). An abuse of discretion is not a mere error in judgment. *See In re A.K.*, 936 A.2d 528, 532-533 (Pa. Super. 2007). Rather, an appellant must show that the trial court's judgment was "manifestly unreasonable," that the trial court did not apply the law, or that its actions were the result of partiality, prejudice, bias or ill will. *Id*. (citation omitted). Further, credibility is exclusively for the trial court to determine, and it is free to believe all, part, or none of the evidence. *See id*. When the record supports the trial court's findings, we will affirm. *See id*.

A goal change request is governed by the Juvenile Act, 42 Pa. C.S.A. § 6301 *et seq.*, which was amended in 1998 to conform to the federal Adoption and Safe Families Act ("ASFA"), 42 U.S.C. § 671 *et seq*. *See In re M.S.*, 980 A.2d 612, 615 (Pa. Super. 2009). We have recognized that "[b]oth statutes are compatible pieces of legislation seeking to benefit the best interest of the child, not the parent. . . . ASFA promotes the reunification of foster care children with their natural parents when feasible. . . . Pennsylvania's Juvenile Act focuses upon reunification of the family, which means that the unity of the family shall be preserved 'whenever possible.'" *Id*. (citing 42 Pa.C.S.A. § 6301(b)(1)). Accordingly, child welfare agencies are required to make reasonable efforts to return a foster child to

his or her biological parent. *See In re N.C.*, 909 A.2d 818, 823 (Pa. Super. 2006). When those efforts fail, the agency "must redirect its efforts toward placing the child in an adoptive home." *Id*. (citation omitted). We have stated that

> [w]hen a child is placed in foster care, after reasonable efforts have been made to reestablish the biological relationship, the needs and welfare of the child require [the child welfare agency] and foster care institutions to work toward termination of parental rights, placing the child with adoptive parents. It is contemplated [that] this process realistically should be completed within 18 months.

*Id*. at 824 (emphasis omitted; brackets in original) (citations omitted).

At permanency review hearings for dependent children removed from the parental home, a trial court must consider the following factors.

**(f) Matters to be determined at permanency hearing.—**

At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

. . .

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

  (i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

  (ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

  (iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

. . .

42 Pa.C.S.A. § 6351(f)(1)-(6), (9).

"These statutory mandates clearly place the trial court's focus on the best interests of the child." *In re S.B.*, 943 A.2d at 978 (citation omitted). "Safety, permanency, and well-being of the child must take precedence over **all** other considerations." *Id*. (emphasis in original) (citation omitted).

- 5 -

Moreover, "the burden is on the child welfare agency . . . to prove that a change in goal would be in the child's best interest." *In re R.I.S.*, 36 A.3d 567, 573 (Pa. 2011) (citations omitted).

After our careful review of the record, we are satisfied the trial court properly addressed the issue concerning the Child's change of goal from "Return Home" to "Planned Permanent Living Arrangement/Long Term Foster Care." Child is well-adjusted in foster care. Foster care provides Child with protection and safety and allows Child to reside with her half-brother, who is also placed with the same foster family.

The trial court's decision is far from manifestly unreasonable. Mother herself states that she has given up on reunification with Child. And she has determined that Child's needs would best be met by her foster parents. (She does continue to visit Child regularly during her placement with the foster family.) Mother has not been willing or able to put the needs of Child above her own needs and continues to live with her abusive boyfriend.

Thus, the trial court did not err in changing the placement goal from "Return Home" to "Planned Permanent Living Arrangement/Long Term Foster Care." The evidence showed that it was in the best interest and welfare of the child to change the goal first to "Planned Permanent Living Arrangement/Long Term Foster Care" and then to adoption.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/29/2015</u>