J-S48045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.M.-F., a/k/a A.M.-F., a Minor Adjudicated Child | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.F., Natural Father | No. 340 WDA 2016 |

Appeal from the Order entered February 1, 2016,
in the Court of Common Pleas of Erie County,
Domestic Relations, at No.: 64 of 2015

BEFORE:  BOWES, DUBOW and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED AUGUST 22, 2016**

S.F. ("Father") appeals from the permanency review Order, issued in response to a request by the Erie County Office of Children and Youth ("OCY"), changing the permanency goal for his daughter, A.M.-F. ("Child") (born in October 2014), to adoption, pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6301, *et seq.* ("the Act").  We affirm.

The juvenile court set forth the factual background and procedural history of this appeal in its March 11, 2016 Opinion (regarding Father), which we incorporate herein.  *See* Juvenile Court Opinion (Father), 3/11/16, at 2-6.  On February 17, 2016, Father timely filed a Notice of Appeal, along with a Concise Statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).   The juvenile court then issued a Pa.R.A.P. 1925(a) Opinion.

On appeal, Father presents the following issues for our review:

1. Whether the Juvenile Court committed an abuse of discretion and/or error of law when it made the findings/conclusions that [OCY] had established a basis to change the goal to [a]doption when it found that there had been minimal compliance with the permanency plan[?]

2. Whether the Juvenile Court committed an abuse of discretion and/or error of law when it made the findings/conclusions that [OCY] had established that [] Father failed to remedy the conditions that led to the placement of … [C]hild[?]

3. Whether the Juvenile Court committed an abuse of discretion and/or error of law when it determined that [] [F]ather did not comply with services and the court [O]rder[?]

4. Whether the Juvenile Court committed an abuse of discretion and/or error of law when it concluded that appropriate and necessary services were provided to [] [F]ather[?]

5. Whether the Juvenile Court committed an abuse of discretion and/or error of law by failing to consider the entire record in the case, when prior permanency review hearings reflected that Father was in compliance[?]

Father's Brief at 5 (capitalization omitted).[1]

We first note our standard of review:

When we review a [juvenile] court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion. In order to conclude that the [juvenile] court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record. We are bound by the [juvenile] court's findings of fact that have support in the record. The [juvenile] court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony. In carrying out these responsibilities, the [juvenile] court is free to believe all, part, or none of the evidence. When the [juvenile] court's

---

[1] Father stated his issues somewhat differently in his Concise Statement; nevertheless, we find the issues preserved for review.

findings are supported by competent evidence of record, we will affirm even if the record could also support an opposite result.

*In re A.K.*, 936 A.2d 528, 532-33 (Pa. Super. 2007) (citation omitted).

When considering a petition for goal change for a dependent child under the Act, the juvenile court considers

> the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

*Id.* at 533 (citing 42 Pa.C.S.A. § 6351(f)). Moreover, "in matters of placement for a dependent child, the [juvenile] court must be guided by the best interests of the child--not those of his or her parents." *In re A.K.*, 936 A.2d at 533.

Additionally, Section 6351(f.1) of the Act requires the juvenile court to make a determination regarding the child's placement goal:

> **(f.1) Additional determination**.— Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:
>
> \*   \*   \*
>
> (2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S.A. § 6351(f.1)(2).

- 3 -

We will address Father's issues simultaneously, as they are related. Father argues that the juvenile court abused its discretion by changing Child's permanency goal to adoption where (1) the evidence established that Father previously showed some compliance with his permanency plan; (2) Father remedied the conditions that led to Child's placement (namely, the concerns related to his epilepsy); and (3) OCY failed to provide Father with adequate and appropriate services. *See* Father's Brief at 8-13.

In its Pa.R.A.P. 1925(a) Opinion, the juvenile court aptly discussed the applicable law in addressing Father's claims, and determined that (1) his claims did not establish any abuse of discretion; (2) Father had failed to take appropriate action to remedy the conditions that led to the placement of Child; (3) OCY, in fact, provided Father adequate services, but he declined to utilize those services; and (4) continued, indefinite placement is contrary to Child's best interests. *See* Juvenile Court Opinion (Father), 3/11/16, at 7-10. The juvenile court's reasoning and determination is supported by the law and the record, and we thus affirm on this basis with regard to Father's issues on appeal. *See id.* Accordingly, we discern no abuse of discretion by the juvenile court, and affirm its Order changing Child's permanency goal to adoption.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/22/2016

IN THE INTEREST OF:  A. M. - F.,
~~a/k/a~~
~~b,~~
A minor adjudicated dependent

IN THE COURT OF COMMON PLEAS
OF ERIE COUNTY, PENNSYLVANIA
JUVENILE DIVISION
NO. 64 of 2015

## 1925(a) OPINION (APPEAL OF FATHER)

On January 29, 2016, an order was entered in a dependency case changing the goal to adoption for the child, A.F. The father of A.F., ▉▉▉▉ now challenges the order contending this court erred in several respects when it eliminated reunification as a goal.[1] The record supports the finding the change of goal to adoption was established by clear and convincing evidence and is in the best interests of the child. It is therefore requested the Superior Court affirm the order.

## ISSUES PRESENTED

Appellant raises the following issues in his Statement of Errors Complained of on Appeal:

First, this court committed abuse of discretion or an error of law when it made findings the Appellant had only minimally complied with the permanency plan, specifically regarding treatment of his epilepsy.

Second, this court committed abuse of discretion or an error of law when it made findings the Appellant failed to participate with Healthy Families of America despite evidence to the contrary.

Third, this court committed abuse of discretion or an error of law when it made findings the Appellant failed to participate in or schedule a psychiatric evaluation despite evidence to the contrary.

---

[1] Mother has also appealed the termination order. That appeal is docketed at 292 WDA 2016. The issues she raised are addressed in a separate opinion.

1



Fourth, this court committed abuse of discretion or an error of law when it made findings the agency assisted in referrals or services as needed, despite evidence to the contrary.

Fifth, this court committed abuse of discretion or an error of law when it determined the Appellant was not making an effort to remedy the conditions that initiated dependency proceedings and by granting the agency's request to change the goal to adoption after the child had been in placement for only nine months.

Sixth, this court committed abuse of discretion or an error of law when it failed to provide additional time for the Appellant to obtain additional necessary services to facilitate his compliance with the treatment plan.

Seventh, this court committed abuse of discretion or an error of law when the court changed the goal to adoption after failing to consider the status of the July 6, 2015 and October 21, 2015 permanency review hearings.

## PROCEDURAL HISTORY AND FACTS

In March 2015, the child was removed from mother's care due to the mother's significant cognitive limitations. At the time of the child's removal, the Appellant was not a primary caregiver for the child. Since her birth, Appellant had been only minimally involved in the child's life. Appellant has epilepsy, and, at the time of the child's removal, received no regular medical care to treat his condition for at least one year. *Court Summary, 1/25/16, p. 1.*

On March 25, 2015, the child was adjudicated dependent. Each parent stipulated to the facts underlying the basis for adjudication, including the Appellant's minimal involvement with the child and untreated epileptic condition. *Court Summary, 7/6/15, p.1.* A dispositional hearing took place on April 22, 2015.

2

A permanency review hearing followed on July 6, 2015. At the conclusion of this hearing, the court ordered that the child remain in foster care. *Permanency Review Order, 7/8/15, p. 2.* Appellant, though compliant with the treatment plan, had yet to obtain stable or suitable housing. Domestic violence between his roommates was still an issue in his current living arrangements. Appellant was also not medically cleared by his neurologist to provide care for his daughter unsupervised, though he was receiving medication to control his seizures. *Court Summary, 7/6/15, p. 6.* A review was set for ninety (90) days.

A second permanency review hearing took place October 21, 2015. The court was troubled by Appellant's new criminal charges, lack of suitable housing, and sporadic participation with Healthy Families of America. Though the Appellant relocated in September 2015, at the time of the October hearing, he had yet to connect utility services to the home. *Permanency Review Hearing Transcript, 10/21/15, p. 12; See also Court Summary, 10/21/15, p.5.* On several occasions, when the worker went to Appellant's residence to determine its suitability for visits, Appellant's roommates would not give the worker access to the home. *Permanency Review Hearing, 10/21/15, p. 21.* Due to Appellant's living arrangements, visitation was no longer permitted in the home by the agency. *Permanency Review Hearing Transcript, 10/21/15, p.12.*

Testimony from the caseworker revealed the Appellant was difficult to contact and that Appellant did not reach out for services. *Permanency Review Hearing Transcript, 10/21/15, p.10.* He did not have a stable phone and switched phone numbers six times in as few as two months preceding the review hearing. *Permanency Review Hearing Transcript 10/21/15, p. 19. Court Summary, 10/21/15, p. 7.*

Appellant's neurological condition remained unaddressed. Appellant's caseworker accompanied him to his last neurological appointment in September 2015. Staff informed the worker that Appellant was a "noncompliant patient" to the point where they were "thinking of discharging him from the practice." Since April 2015, the doctor's office ordered Appellant to complete bloodwork on three separate occasions. Appellant did not follow through with any. Prior blood level indicated Appellant was not taking his anti-convulsive medication. *Permanency Review Hearing Transcript, 10/21/15, p. 11*. The neurologist reported significant concerns about Appellant's ability to successfully and safely parent and care for himself so long as his neurological condition remained unaddressed. *Court Summary 10/21/15, p. 5*.

Though concerned with the Appellant's circumstances and lack of initiative and progress, the agency felt he deserved more time to remedy the issues, and expressed a desire to continue to work with the Appellant. *Permanency Review Hearing Transcript, 10/21/16, p. 9-10*. At the conclusion of this hearing, rather than change the goal to adoption, reunification remained, and a concurrent goal of adoption was added. A review was set for ninety days.

A third permanency review hearing took place on January 25, 2016. On this day, Appellant was also arraigned on several minor misdemeanor criminal charges. The court also learned Appellant continued to reside in the home he obtained in September 2015, until January 4, 2016, without utility services. At this time, he moved to a new residence, with two new roommates, whose full names he did not know. *Permanency Review Hearing Transcript, 1/25/16, p. 41*.

Appellant also remained inconsistent with his neurological medication and treatment recommendations, and failed to follow through with obtaining a blended case manager to help him with his medical care. *Permanency Review Hearing Transcript, 1/25/16, p. 17*. His blood

4

work over the past year still indicated he had not consistently taken his medication. Appellant's caseworker attended a neurology appointment with him on September 30, 2015, and learned from the doctor that Appellant "persistently failed to follow through with the recommendations made to manage his condition." These facts were also noted at the time of the October hearing. *Court Summary, 1/25/16, p. 8.* The agency noted they had been unable to facilitate reunification because Appellant had not remedied any of the issues leading to the child's adjudication. *Court Summary, 1/25/16, p. 5.*

At the time of the January hearing, Appellant had only sporadically participated in treatment with Healthy Families of America and he still persisted in minimal follow-through. He missed at least five (5) scheduled visits. At least one of these misses occurred because he was "having seizures and" was "out of it." *Court Summary, 1/25/16, p.7.*

When Appellant did appear for scheduled visitation, his interactions and bond with the child were minimal, until the visit prior to the January hearing, when the Appellant believed his child was going to be put up for adoption. *Court Summary, 1/25/16, p. 8. See also Permanency Review Hearing Transcript, 1/25/16, p. 19.*

Workers again testified it was often hard to reach the Appellant because he did not have a stable phone or phone number. At the time of the January hearing, he had changed residences at least three times and did not keep the workers updated with his whereabouts. *Permanency Review Hearing Transcript, 1/25/16, p. 15.*

At the time of the hearing in October, the agency required the Appellant to participate in a psychiatric evaluation. However, the Appellant neither participated nor scheduled one; nor did he obtain a blended case manager.

5

After determining the agency made reasonable efforts to prevent or eliminate the need to remove the child from the parent, and that the parents' circumstances remained unchanged, the agency's request to change the goal to adoption was granted. Services to both parents were terminated. The child was placed in a pre-adoptive home. *Permanency Review Order, 1/29/16, p. 2.*

This timely appeal followed.

## STANDARD OF REVIEW

When reviewing an appeal from a decree changing a permanency goal, an appellate court accepts the findings of fact and credibility determinations of the court if they are supported by the record. *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). An abuse of discretion standard is used by the appellate court.

An abuse of discretion is not found if the lower court's judgment was reasonable, the court applied the law, and the court's action was not a result of partiality, prejudice, bias, or ill will. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the lower court's decision, the decree must stand. *In re A.K.*, 936 A.2d 528, 533 (Pa.Super. 2007). In a change of goal proceeding, the lower court must focus on the child's best interests, and not the interests of the parents. *Id.* The agency has the burden of proving the change in goal would be in the child's best interests. *In re M.B.*, 674 A.2d 702, 704 (Pa.Super. 1996).

## DISCUSSION

The Juvenile Act generally requires the Office of Children and Youth to request a goal change when the child has been in placement for fifteen out of twenty-two months. 42 Pa.C.S. §6351 (f)(9). Appellant asserts the court committed an abuse of discretion and/or error of law

6

when it ordered the goal changed to adoption after the child had been in care for ten and a half months.

There is nothing in the Juvenile Act, case law, or rules of procedure that prevent an agency from requesting a goal change sooner than the prescribed fifteen out of twenty-two month demarcation, nor is there law in Pennsylvania prohibiting the court from ordering the agency to change the permanency goal at any time it is clear reunification is not viable and another permanency goal for the child is more appropriate. For example, the Pennsylvania Superior Court affirmed several lower court orders changing the permanency goal to adoption at the dispositional phase. See *In re D.P.,* 972 A.2d 1221 (Pa.Super. 2009*); In re M.S.,* 980 A.2d 612 (Pa.Super. 2009).

The Superior Court has also held the underlying policy of the Juvenile Act is to curb an inappropriate focus on protecting the rights of the parents when there is a risk of subjecting children to indefinite foster care or returning them to abusive homes. *In re C.B.,* 861 A2d. 287, 295 (Pa.Super. 2004). Moreover, safety, permanency, and the well-being of the child must take precedence over all other considerations, including the rights of the parents. *Id.* If at any time it is clear reunification is not viable, a change of goal to adoption is permitted to facilitate moving the child into a safe, permanent, living arrangement.

Reunification is not an acceptable option in this case. The record demonstrates by clear and convincing evidence Appellant's contention the court changed the goal to adoption too quickly is without merit. Testimony presented at both the October 2015 and January 2016 review hearings show Appellant's first, second, third, fourth, and fifth assignments of error, insofar as they each attack factual findings, are contradicted by the record.

7

Appellant was not compliant with his epilepsy treatment. His inaction and inability to understand how his condition affected the well-being of his daughter heavily favors the agency's request to change the goal to adoption. The neurologist considered discharging Appellant from care due to non-compliance with his medication and request for bloodwork. *Court Summary, 1/25/16, p. 8; See also Permanency Review Hearing Transcript, 10/21/15, p. 11; Court Summary, 1/25/16, p. 8.* At no point during these proceedings could the neurologist medically clear the Appellant in order for him to independently care for his child, especially when, according to the neurologist, the Appellant appeared unable to care for himself. Given these facts, it is unclear how Appellant can assert he has been compliant with the portion of his treatment plan related to his epilepsy treatment.

Appellant's inability to care for himself is likewise supported by Appellant's inability to obtain safe and stable housing. Appellant lived in a home from September 2015 thru early January of 2016 without utilities. He appeared to be in no hurry to remedy this condition, nor did he appear to understand how lack of suitable housing and choice of roommates affected his ability to see his daughter. At least one time, Appellant's roommates would not allow agency workers access to Appellant's home. At his most recent residence, he was unable, or possibly, unwilling, to give the agency workers the full names of the people with whom he lived. Because of this, visitation could not occur at Appellant's residence, hindering the agency's attempts to reunify the child with the Appellant. *Permanency Review Hearing Transcript, 10/21/15, p. 21; See also Permanency Review Hearing Transcript, 1/25/16, p. 41.*

Testimony further revealed the Appellant failed to participate consistently with Healthy Families of America, participate in or schedule a psychiatric evaluation, and follow through with additional services made available to him by his caseworkers. His untreated epileptic condition

8

caused him to miss at least one visit with the child. He reported to his case worker and social service aid the following day that he missed the meeting because he was "unable to wake up...due to 'having seizures and' was 'out of it.'" *Court Summary, 1/25/16, p.7.* This episode, coupled with at least six other instances where the Appellant missed appointments with Healthy Families of America show his non-compliance with their program, and further non-compliance with his over-all treatment plan. Appellant's refusal to take his medication and refusal to recognize the scope of his illness without question has a severe, detrimental impact on his ability to parent.

At the time of the October hearing, Appellant was ordered to participate in a psychiatric evaluation. It was also recommended he obtain a blended case manager. Appellant completed neither of these tasks. *Court Summary, 1/25/16, p.7.* Both services were recommended by the agency to help the Appellant meet his own personal needs and frustrations, and because he appeared to focus more on discussing these issues with the caseworkers than spending time with his daughter during visitations. *Healthy Families of America Program, Service Summary Report, 1/21/16, p.3.*

Appellant additionally contends he was not given enough time to obtain additional services and the agency did not refer him to other services as needed. The record contradicts him. Appellant's Healthy Families of America worker attempted to assist the Appellant in obtaining additional services related to general personal well-being and financial assistance, though not "required or delineated in the Healthy Families Program Parameters," but Appellant failed to follow through with either obtaining these additional services or obtaining a blended case manager. *Healthy Families of America Program Service Summary Report, 1/21/16, p. 3.*

9

The testimony showed the Appellant was resistant when services were offered and referrals made. *Permanency Review Hearing Transcript, 10/21/15, p. 10.*

It is of no consequence Appellant claims he was unable to reach the caseworkers or service providers, or that these agencies did not return his phone calls. Appellant continually passed through a revolving door of residences and numerous phone changes. The changes in his living situation were often not communicated to the agencies. *Permanency Review Hearing Transcript 10/21/15, p. 19; See also Permanency Review Hearing Transcript, 1/25/16, p. 15.* It is unclear how the Appellant expected the agency to return his calls or further assist him in obtaining services or believes he complied with the requirements of Healthy Families of America when he missed at least half of his appointments with them and was, more often than not, unable to be contacted due to his own itinerant nature.

Appellant's actions support the court's conclusion that allowing reunification to remain as a goal would not serve the child's best interests. Appellant's non-compliance with vital medical treatment, inability to maintain safe and stable housing, and failure to attend visits with the child show Appellant could not safely parent the child. The fact that none of the conditions that led to the child's placement were remedied after ten and a half months in placement demonstrates reunification is no longer a viable goal and would not serve the child's best interests.

## CONCLUSION

Appellant has consistently demonstrated he is unwilling to address his mental or physical health concerns by complying with his treatment plan, to the detriment of his daughter. Clear and convincing evidence exists the best interests of the child would be served by eliminating

10

reunification as a goal and allowing OCY to proceed to adoption. It is therefore respectfully requested this Court affirm the January 29, 2016 Permanency Review Order.

Dated this 11th day of March, 2016.

BY THE COURT:

_____ J.

ROBERT A. SAMBROAK, JR.

cc: Kevin C. Jennings, Esq. (OCY)
Patricia Ambrose, Esq. (GAL)
Charles Sacco, Esq. (Attorney for Mother)
Elizabeth Brew Walbridge, Esq. (Attorney for Father)

11