J-A18031-16 & J-A18032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: S.I.M.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | |
| APPEAL OF: YORK COUNTY CHILDREN AND YOUTH SERVICES | No. 103 MDA 2016 |

Appeal from the Order Entered December 17, 2015
In the Court of Common Pleas of York County
Juvenile Division at No(s): CP-67-DP-0000065-2013

========================================================

| | |
|---|---|
| IN THE INTEREST OF: L.J.L.E.K., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | |
| APPEAL OF: YORK COUNTY CHILDREN AND YOUTH SERVICES | No. 104 MDA 2016 |

Appeal from the Order Entered December 16, 2015
In the Court of Common Pleas of York County
Juvenile Division at No(s): CP-67-DP-0000066-2013

========================================================

| | |
|---|---|
| IN RE: ADOPTION OF: S.I.M.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |

| | |
|---|---|
| APPEAL OF: YORK COUNTY OFFICE OF CHILDREN, YOUTH AND FAMILIES | |
| | No. 172 MDA 2016 |

Appeal from the Order Entered December 16, 2015
In the Court of Common Pleas of York County
Orphans' Court at No(s): 2015-0031

====================================================

| | |
|---|---|
| IN RE: ADOPTION OF: L.J.L.E.K., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: YORK COUNTY CHILDREN AND YOUTH SERVICES | |
| | No. 173 MDA 2016 |

Appeal from the Order Entered January 19, 2016
In the Court of Common Pleas of York County
Orphans' Court at No(s): 2015-0030

====================================================

| | |
|---|---|
| IN RE: ADOPTION OF: S.I.M.S. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: GAL | |
| | No. 134 MDA 2016 |

Appeal from the Order Entered December 16, 2015
In the Court of Common Pleas of York County
Orphans' Court at No(s): 2015-0031

====================================================

- 2 -

| | |
|---|---|
| IN RE: ADOPTION OF: L.J.L.E.K. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: GUARDIAN AD LITEM | No. 135 MDA 2016 |

Appeal from the Order Entered January 19, 2016
In the Court of Common Pleas of York County
Orphans' Court at No(s): 2015-0030

===================================================

| | |
|---|---|
| IN THE INTEREST OF: S.I.M.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: GUARDIAN AD LITEM | No. 136 MDA 2016 |

Appeal from the Order Entered December 16, 2015
In the Court of Common Pleas of York County
Domestic Relations at No(s): CP-67-DP-0000065-2013

===================================================

| | |
|---|---|
| IN THE INTEREST OF: L.J.L.E.K., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: GUARDIAN AD LITEM | No. 137 MDA 2016 |

Appeal from the Order Entered December 16, 2015

J-A18031-16 & J-A18032-16

In the Court of Common Pleas of York County
Juvenile Division at No(s): CP-67-DP-0000066-2013

BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED SEPTEMBER 07, 2016**

Appellants, Children, Youth and Families ("CYF") and Guardian *ad litem* ("GAL"), appeal from the orders denying the petitions to involuntarily terminate the parental rights of K.S. ("Mother") as to her two minor children, S.I.M.S. (born in April of 2010) and L.J.L.E.K. (born in June of 2011) (collectively "the Children"), as well as the orders changing the goal to placement with legal custodian and establishing a concurrent goal of reunification. Appellants also appeal from the orders denying the petitions to involuntarily terminate the parental rights of T.A., who is the father of S.I.M.S. ("Father 1") and C.K., who is the father of L.J.L.E.K. ("Father 2"), as well as the orders changing the goal to placement with legal custodian and establishing a concurrent goal of reunification.[1] For the reasons that

---

[1] On February 25, 2016, this Court consolidated CYF's appeals, which were docketed at 103 MDA 2016, 104 MDA 2016, 172 MDA 2016, and 173 MDA 2016. On February 25, 2016, this Court consolidated GAL's appeals, which were docketed at 134 MDA 2016, 135 MDA 2016, 136 MDA 2016, and 137 MDA 2016. Moreover, this Court *sua sponte* consolidated CYF's and GAL's appeals.

[*] Former Justice specially assigned to the Superior Court.

- 4 -

follow, we vacate the trial court's orders and remand for further proceedings consistent with this decision.

On March 22, 2013, CYF filed an application for emergency protective custody as to the Children on the basis the Children had unstable housing, and following a hearing, the Children were placed with an emergency caretaker. On April 9, 2013, the Children were adjudicated dependent with the goal being return to a parent or guardian.

On March 24, 2015, CYF filed petitions to involuntary terminate Mother's, Father 1's, and Father 2's parental rights to the Children, and change the placement goal to adoption. On July 2, 2015, July 9, 2015, and August 25, 2016, the trial court held hearings on the petitions. On December 16, 2015, the trial court denied CYF's petitions to involuntarily terminate Mother's, Father 1's, and Father 2's parental rights to the Children. The trial court also entered orders on December 17, 2015, changing the goal to placement with legal custodian and establishing a concurrent goal of reunification.

On January 14, 2016, CYF filed timely notices of appeal and concise statements of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i) and (b). On appeal, CYF raises the following issues for our review:

> **1.** Whether the [trial] court erred in failing to find that [CYF] presented clear and convincing evidence to change the goal from reunification to placement for adoption?

**2.** Whether the [trial] court erred in failing to find that [CYF] presented clear and convincing evidence that:

    **a.** The parents, by conduct continuing for a period of at least six (6) months immediately preceding the filing of the petition for involuntary termination of parental rights either have evidenced a settled purpose of relinquishing parental claims to the minor children, or have failed to perform their parental duties

    **b.** The repeated and continued incapacity abuse, neglect, or refusal of the parents have caused the minor children to be without essential parental care, control or substance necessary for their physical or mental well-being and that the conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by the parents.

    **c.** The minor children have been removed from the care of the parents by the court or under a voluntary agreement with the agency for a period of at least six (6) months, the conditions that led to the removal or placement of the children continues to exist, the parents cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parents are not likely to remedy the conditions which led to the removal or placement of the minor children within a reasonable period of time, and termination of parental rights will serve the best needs and welfare of the minor children.

    **d.** The minor children have been removed from the care and custody of the parents by the court or under a voluntary agreement with an agency, twelve (12) months or more have elapsed from the date of the removal or placement, the conditions which [led] to the removal or placement of the minor children continues to exist and termination of parental rights would serve the needs and welfare of the minor children.

**3.** Whether the [trial] court erred in failing to find that [CYF] presented clear and convincing evidence that terminating the parental rights of the parents would serve the best interest of the minor children and would otherwise advance the developmental, physical, and emotional needs and welfare of the minor children?

CYF's Brief at 1-2.

On January 21, 2016, GAL filed timely notices of cross appeal, *see* Pa.R.A.P. 511 and 903(b), and concise statements of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i) and (b). On appeal, GAL raises the following issues for our review:

> **1.** Whether, in denying the termination of Mother's parental rights, the [t]rial court erred in its application of the case law in that it gave too much weight to the bond that Mother may have with the [C]hildren without consideration of whether the bond was positive or negative in its overall impact on the best interests of the [C]hildren?
>
> **2.** Whether, with regard to the Fathers, the trial court erred in giving any weight to the existence of a bond in that there was little to no evidence that any bond existed or that such a bond should be given more weight than the lack of effort, availability, or progress in being resources for the Children[?]
>
> **3.** Whether the [t]rial court erred in failing to give appropriate weight to the [C]hildren's needs for permanence as those factors relate to the best interests of the [C]hildren[?]
>
> **4.** With regard to the [c]hange of [g]oal, the GAL joined in the [s]tatement of [m]atters complained of [p]ursuant to Pa.R.A.P. 1925(b) by [CYF] and joins in [CYF's brief].

GAL's brief at 5-6.

Initially, we note that our review is guided by the following legal precepts:

> [With regard to the termination of parental rights,] appellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the

findings of fact and credibility determinations of the trial court if they are supported by the record. *In re R.J.T.*, 608 Pa. 9, 30, 9 A.3d 1179, 1190 (2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As [the Supreme Court] discussed in *In re R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. [The Supreme Court] observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *In re R.J.T.*, [608 Pa. at 28–30], 9 A.3d at 1190. Therefore,. . .we must defer to the trial judge so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 616 Pa. 309, 325-27, 47 A.3d 817, 826-27 (2012) (citations omitted).

The Adoption Act, 23 Pa.C.S.A. §§ 2101–2938, controls termination of parental rights proceedings. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). Specifically, Section 2511 requires the trial court to engage in a bifurcated process before terminating parental rights. Initially, the focus is on the conduct of the parents.

The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the [trial] court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child

under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re Adoption of J.M.*, 991 A.2d 321, 323 (Pa.Super. 2010) (quotation omitted). Clear and convincing evidence is "testimony that is so clear, direct, weighty and convincing" as to enable the fact-finder to come to a clear conviction, "without hesitance, of the truth of the precise facts in issue." *Id.* (quotation omitted).

Moreover, we note that we review a trial court's determinations regarding a goal change under an abuse of discretion standard. Thus, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but [we are] not require[d]. . .to accept the lower court's inferences or conclusions of law." *In re A.B.*, 19 A.3d 1084, 1088 (Pa.Super. 2011) (quotation omitted).

Petitions for a goal change are controlled by the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6375. We have recognized that the statute seeks to benefit the best interests of the child, and not the parents. *In re M.S.*, 980 A.2d 612, 615 (Pa.Super. 2009). "Pennsylvania's Juvenile Act focuses upon reunification of the family, which means that the unity of the family will be preserved 'whenever possible.'" *Id.* (quotation omitted).

Further, at permanency review hearings for dependent children removed from the parental home, a trial court must consider the following factors.

**§ 6351. Disposition of dependent child**

...

**(f) Matters to be determined at permanency hearing.**—
At each permanency hearing, a court shall determine all of the following:

> **(1)** The continuing necessity for and appropriateness of the placement.
>
> **(2)** The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.
>
> **(3)** The extent of progress made toward alleviating the circumstances which necessitated the original placement.
>
> **(4)** The appropriateness and feasibility of the current placement goal for the child.
>
> **(5)** The likely date by which the placement goal for the child might be achieved.
>
> **(5.1)** Whether reasonable efforts were made to finalize the permanency plan in effect.
>
> **(6)** Whether the child is safe.
>
> ...
>
> **(9)** If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and unify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child[.]

42 Pa.C.S.A. § 6351(f)(1)-(6), (9).

In the case *sub judice*, the record is clear that, in denying CYF's petitions to involuntarily terminate the parental rights of Mother and the two fathers, the trial court relied solely upon a parent-child bond analysis. For instance, during the December 16, 2015, hearing, the trial court, indicating it had reviewed the testimony from the previous hearings, ruled as follows:

> Turning first to the July 2, 2015, transcript, Kelly Jacobs, the children's therapist, testified that based upon what the children have told her she believes that the children do enjoy visits with mother the majority of the time. She thinks it's clear that there is a love between mother and children. But she goes on to say that she does not know to what extent because she has not seen them together.

> Later in the testimony she indicates that the children told her positive things about their visits with mother and that it was clear from her conversations with the children that they do have a love for their mom.

> The Catholic Charities therapist, Chelsea Jones, also testified at that day's hearing. On cross-examination when asked to describe the interaction that occurs between mother and children, she says it's positive, mother loves the children, there is physical contact. The children in her opinion don't seem uncomfortable with her. They seem comfortable with her.

> When we came back to [the] hearing on July 9, 2015, the caseworker, Kristina Scott, indicated that she had the opportunity to observe the interaction between the children and their mother and opined that the interaction between the children and their mother and the children and their foster parents really doesn't differ. They are equally as excited to see [Mother] as their foster parents.

> And she went on to testify that she believes the same is true regarding the interaction [Father 2] has with his child, that it is the same as with the foster parents. In regard to that interaction between foster parents and the children, Ms. Scott testified that the children have [a] very good interaction with the foster family. They sit next to them on their laps, or they are standing behind them playing in their hair. They have a very good bond with the foster parents.

Later in her testimony Ms. Scott was asked if she believes there would be any long-term negative impact upon [S.I.M.S.] if her parents' rights were to be terminated. She says, yes, if mother was cut completely out of their lives. She went on to say that mother and children have a very strong bond. She also indicated that she believes it's not just mother that has a strong bond with the children, but the children also have a strong bond with their mother.

On the third day of the hearing, on August 25, 2015, Ms. Scott again testified, and she indicated that [S.I.M.S.] interacts very well with her mother, as does [L.J.L.E.K.].

Further in the testimony she indicates that her opinion that the children and mother share a strong bond with each other is based upon her observing the interaction between the two children and their mother.

And finally, Ms. Scott testifies with regards to the bonding issue that she believes that [Father 2], father of [L.J.L.E.K.], has a strong bond with [L.J.L.E.K.].

And that is the extent of the testimony on the parent/child bond that was presented at this hearing.

So the question for the [c]ourt is, given the extent and nature of that testimony and the requirement we not terminate parental rights unless the evidence we found credible clearly and convincingly proves that it is in the best interest of the child in question to do so, and that a key component of that best interests analysis is what, if any, bond exists between parent and child, and what the nature of the bond is.

We cannot conclude that the evidence presented with regards to these petitions on the three days of the hearing clearly and convincingly proves that it is in the best interest and welfare of the child to terminate the parents' rights because of the fact all of the evidence of bonding presented tends to prove that there is a strong bond between mother and her children and [Father 2] and his child, and that in particular [S.I.M.S.] would suffer long-term ill effects should she be cut off from her mother.

Now, it is for that reason that I'm going to deny the request that the mother's rights to these two children be terminated. And because I don't think it would be in the best interest of the children under these circumstances to terminate either of the father's rights, we are not going to terminate their

rights. There's no point in leaving the child with only one parent.

N.T., 12/16/15, at 7-12.[2]

Additionally, at the hearing, the trial court indicated that based on the parent-child bond assessment, it was denying CYF's request to change the goal to adoption. *Id.* at 12.

We conclude that, while the parent-child bond was an important factor to be considered by the trial court in the matter at hand, it was not the sole factor. As indicated *supra*, in termination matters, the trial court must initially focus on the parents' conduct and determine whether the party seeking termination has proven by clear and convincing evidence that the parents' conduct satisfies one of the statutory grounds for termination under Section 2511(a). *In re Adoption of J.M.*, *supra*. The trial court improperly conducted no such inquiry in this case.

Moreover, as it relates to the best interest of the children inquiry under Section 2511(b), we conclude the trial court improperly limited its inquiry to an assessment of the natural parent-child bond, and even in this regard, the trial court's analysis is incomplete as it relates to Father 1 and Father 2. Specifically, with regard to the fathers' bonds, the trial court did not conduct

---

[2] On January 19, 2016, the trial court subsequently filed this portion of the transcript as an Opinion and order.

any bond analysis with regard to Father 1 and S.I.M.S., and the bond analysis with regard to Father 2 and L.J.L.E.K. is scant.

In any event, with respect to Section 2511(b), this Court has explained the requisite analysis involves a determination of whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. This Court has stated: "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005) (citation omitted).

While an examination of the parent-child bond, and the effect severance of the bond will have on the child are important considerations under Section 2511(b), they are not the sole considerations. *See id.* Stated differently, the trial court must give adequate consideration to all of the needs and welfare of the child, and not solely to the emotional bond, if any, between the natural parent and child. *In re K.Z.S.*, 946 A.2d 753 (Pa.Super. 2008).

Additionally, as our Supreme Court has stated: "Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, 620 Pa. 602, 629, 71 A.3d 251, 268 (2013) (citation omitted). Moreover, our Supreme Court has directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts

must keep the ticking clock of childhood ever in mind." *Id.* at 631, 71 A.3d at 269. The Supreme Court observed in *In re T.S.M.* that "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail. . .the result, all too often, is catastrophically maladjusted children." *Id.*

Further, with regard to the termination of parental rights, inasmuch as the record suggests Father 1 and Father 2 are incarcerated, it bears mentioning that our Supreme Court has held that incarceration is a factor to be considered in determining whether a parent's rights should be involuntarily terminated. *In re Adoption of S.P.*, *supra*. Here, the trial court did not mention Father 1's and Father 2's incarceration in conducting its termination analysis.

Finally, as it relates to the permanency review hearing and in determining whether a goal change was necessary, in rendering its orders, the trial court erroneously relied solely on a parent-child bond assessment and did not consider the factors set forth in Section 6351(f). We conclude this was error. *See* 42 Pa.C.S.A. § 6351(f); *In re R.J.T.*, *supra* (indicating the trial court must consider the factors in Section 6351(f) in determining

what placement is best suited to the safety, protection and physical, mental and moral welfare of the child under 42 Pa.C.S.A. § 6351(g)).[3]

For all of the aforementioned reasons, we vacate the trial court's orders entered in this matter and remand for the trial court to conduct a proper analysis under Sections 2511(a) and (b) of the Adoption Act with regard to CYF's petitions to involuntarily terminate the parental rights of Mother, Father 1, and Father 2 as to the Children. Moreover, we direct the trial court to conduct a proper analysis under the Juvenile Act as it applies to CYF's petition for a change of goal as to the Children.

Orders Vacated; Case remanded with Instructions; Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/7/2016

---

[3] We note that, in its Pa.R.A.P. 1925(a) opinion, the trial court elaborated that it considered factors (1) to (6) of Section 6351(f). However, although the trial court admitted that the date by which the goal for the Children might be achieved is "unknown," and reunification is "currently not appropriate because Mother is not ready to resume custody of the Children[,]" the trial court declined to change the goal placement to adoption solely because of the "strong, positive bond between Mother and the Children[.]" Trial Court's Pa.R.A.P. 1925(a) Opinion, filed 2/22/16, at 7-10.